IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD J. RENAUER, SR., et al. | : |
| | : |
| v. | : Civil Action No. 09-0140 |
| DISCOVERY CREEK CHILDREN'S | : |
| MUSEUM OF WASHINGTON, INC., | |
| et. al. | : |

**MEMORANDUM OPINION**

Presently pending and ready for review in this product liability case are the motions for summary judgment submitted by Defendant Discovery Creek Children's Museum of Washington, Inc. (ECF No. 104), Defendant Merrifield Garden Center Corporation (ECF No. 93), Defendant Creative Playthings, Ltd. (ECF No. 87), and Third Party Defendant Playcore Wisconsin, Inc. (ECF No. 79), and the motion to strike or exclude Plaintiffs' expert testimony filed by Defendant Discovery Creek Children's Museum of Washington, Inc. (ECF No. 83) and joined by Defendant Merrifield Garden Center Corporation (ECF No. 86) and Defendant Creative Playthings, Ltd. (ECF NO. 92).[1] The issues are fully briefed and

_____

[1] Defendants initially filed their motions for summary judgment as ECF Nos. 82, 87, and 93. In response to a court order requesting that the Defendants provide a schedule for consolidation of the motions for summary judgment, Defendants submitted a consolidated exhibit book, ECF No. 99, and amended motions for or memoranda in support of summary judgment with reference to the consolidated exhibits as ECF Nos. 97, 100, and 104. This memorandum will refer to the amended motions and

the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motions will be granted in part and denied in part. Third Party Defendant's motion will be granted.

## I.   Background[2]

This case arises from an incident at the Discovery Creek Children's Museum of Washington, Inc., located in Glen Echo, Maryland, on November 20, 2005. On that date Plaintiff Edward J. Renauer, Sr. and his now-deceased wife Mary Rita Renauer took two of their granddaughters to the museum. While playing with her granddaughters on an enclosed spiral slide in one of the exhibits, Mrs. Renauer sustained significant injuries, including fractures to her spinal cord that ultimately led to her death on September 18, 2006. Plaintiffs Edward J. Renauer, Sr., individually and as the Personal Representative of the Estate of Mary Rita Renauer; Edward J. Renauer, Jr.; Sean P. Renauer; and Eileen M. Burrow[3] filed suit against Defendants Discovery Creek

---

consolidated exhibit book, although the order will refer to both the original and the amended motions for docket purposes.

[2] The facts are presented in the light most favorable to Plaintiffs, the non-moving party.

[3] Edward J. Renauer, Jr., Sean P. Renauer, and Eileen M. Burrow are the children of Mary Rita Renauer. (ECF No. 2 ¶¶ 4-9). Edward Renauer, Jr. is a resident of Austin, Texas; Sean Renauer is a resident of Gaithersburg, Maryland; and Eileen Burrow is a resident of Shawnee, Kansas. (*Id.*).

Children's Museum of Washington, Inc. ("Discovery Creek"), Merrifield Garden Center Corporation ("Merrifield"), and Creative Playthings, Inc. ("Creative Playthings") alleging that they are responsible for Mrs. Renauer's injuries and ultimate death.

### A. Factual Background

Discovery Creek is a non-profit corporate entity organized under the laws of the District of Columbia. Discovery Creek operates multiple children's museums in the D.C. metropolitan region, including one at the Stable at Glen Echo Park in Glen Echo, Maryland. (ECF No. 2 ¶ 12). The museum in Glen Echo provides an intimate hands-on learning experience for young children. (ECF No. 99-2, at 9, 26-27). In November 2005 Discovery Creek had an exhibit called the Six Legged Sensations. (*Id.* at 29). This exhibit was intended to teach children about insects and their habitats and to demonstrate how insects lived inside of trees. It included a hollow, tree-like structure with an enclosed tubular spiral sliding board. (*Id.* at 29-30, 39-40, 52-53, and 87).

The slide in the Six Legged Sensations exhibit was designed and constructed for Discovery Creek by Merrifield. (ECF No. 100-1, at 39-40, 45-46). For the slide portion of the exhibit, Merrifield acquired and installed a tubular spiral slide known as the "Turbo Tube Slide" as well as the tree

enclosure around the slide. (ECF No. 99-12, at 22-25). The bottom of the slide is located at ground level, while the entrance is located on a platform that can only be accessed by climbing log stairs and crossing a rope-tied log bridge. (ECF No. 99-7; 99-4, at 55). Although the slide was enclosed, the fact that it was circular in nature was readily apparent. The decedent's granddaughter Lola, who was eight at the time of the incident, testified that she was able to tell the slide was round and had a curve from the top of the platform. (ECF No. 99-4, at 56-57). Plaintiffs' expert witness also testified that a reasonably attentive person facing the entrance to the tree portal enclosing the slide could tell that part of the slide was circular. (ECF No. 99-16, at 405).

Merrifield and Discovery Creek had worked together previously on exhibits at the museum, and there was no written contract between the two entities for the construction of the enclosed slide in the Six Legged Sensation exhibit. (ECF No. 99-2, at 47; ECF No. 99-12, at 19-20, 25). Merrifield initially intended to use a tubular spiral slide it had used in previous Discovery Creek exhibits but was unable to locate the slide in its storage. Instead Merrifield purchased the slide at issue from CP Distributors of Virginia, a local retailer that typically sells and installs Creative Playthings branded slides and other playground products for residential users.

(ECF No. 99-22 at 17-18). Despite the label, the tubular slide selected by Merrifield, called the Turbo Tube Slide, was not manufactured by Creative Playthings; it was manufactured by Swing-N-Slide, a division of Third Party Defendant Playcore Wisconsin. (ECF No. 99-12, at 20-21).[4] At the instruction of Discovery Creek, Merrifield assembled and installed the slide inside the tree-like enclosure. (ECF No. 99-12, at 19-21).

On November 20, 2005, Mary Rita Renauer, age 75, along with her husband, Edward Renauer, Sr., and two of their granddaughters, Lola and Sophie, visited Discovery Creek. (ECF No. 99-1, at 98-99). Lola was eight years old at the time and Sophie was three. Discovery Creek has a policy that children must be accompanied by an adult during their visit. (ECF No. 99-2, at 65). The group explored the Six Legged Sensations exhibit, and Sophie and Lola took several trips down the slide. (ECF No. 99-4, at 55, 74-75). Mrs. Renauer was persuaded to join the girls, and descended the slide after Lola but before Sophie. (ECF No. 99-4, at 61-64). No one witnessed

---

[4] Defendant Creative Playthings manufactures and wholesales residential swing sets. (ECF No. 100-22, at 12, 15-17). Creative Playthings does not manufacture slides; it purchases them from various companies to sell along with its swing sets. Of additional note, Merrifield purchased the slide installed at Discovery Museum from CP Distributors, Inc., and not directly from Creative Playthings. CP Distributors and Creative Playthings are commonly owned but not directly affiliated. (*Id.* at 17-19).

Mrs. Renauer inside the slide, but Lola saw when her grandmother exited, and she remembers that Mrs. Renauer appeared unconscious and slumped to one side. (ECF No. 99-4, at 82-86). At that time, Lola got the attention of Mr. Renauer. (ECF No. 99-4, at 87; ECF No. 99-1, at 121-22, 134-35). Doctors later determined that Mrs. Renauer sustained a unilateral facet dislocation of the C5-C6 segments of her spinal cord that caused mobility impairment in all four of her extremities. Plaintiffs' biomechanical expert Jamie R. Williams, Ph.D., believes that the injury was caused by Sophie entering the slide after Mrs. Renauer and striking the back of Mrs. Renauer's head with her foot while Mrs. Renauer's neck was turned sideways inside the slide. (ECF No. 99-10, at 96-97, 101, 118-119, 125). Mrs. Renauer died on September 18, 2006, from respiratory failure, and Plaintiffs contend that this was a complication from the injuries she sustained on the slide at Discovery Creek. In the ten intervening months Mrs. Renauer was intermittently conscious but unable to give a detailed account of the accident. (ECF No. 99-13, at 100).

### B. Procedural Background

Plaintiffs filed a wrongful death and survival action against Defendants Discovery Creek, Merrifield, and Creative Playthings in the Circuit Court for Montgomery County, Maryland on November 7, 2008. (ECF No. 2). Plaintiffs asserted claims

against all three defendants for negligence (counts I, II, III, IV, V, and VI) and claims for breach of warranty (counts VII, and VIII) and strict liability (counts IX and X) against Defendants Merrifield and Creative Playthings. (*Id.*). The case was removed to federal court (ECF NO. 1), and Creative Playthings filed a third party claim against Playcore Wisconsin, Inc. for indemnification and contribution (ECF No. 31). The Defendants asserted cross-claims against each other for indemnification and contribution, and Defendant Discovery Creek also asserted cross-claims against Merrifield and Creative Playthings for breach of warranty. (ECF Nos. 11, 23, 28).

After the close of discovery, Defendants Discovery Creek, Merrifield, and Creative Playthings filed separate motions for summary judgment on all counts of Plaintiffs' complaint (ECF Nos. 97, 100, and 104). Defendants also filed a motion to exclude Plaintiffs' expert testimony or in the alternative for a Rule 104 hearing (ECF Nos. 83, 86, and 92). Plaintiffs submitted an omnibus memorandum in opposition to Defendants' pending motions. (ECF No. 101). In addition, Third Party Defendant Playcore filed a motion for summary judgment on all of Defendants' claims against it. (ECF No. 79). Discovery Creek and Merrifield filed a joint opposition (ECF No. 80), but Creative Playthings has not opposed Playcore's motion.

## II. Analysis

### A. Defendants' Motions for Summary Judgment

### 1. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to

confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

## 2. Negligence

Defendants seek summary judgment on Plaintiffs' claims for negligence. They argue that Plaintiffs have failed to demonstrate any violation of a standard of care owed them and that Plaintiffs have failed to demonstrate that their actions were the cause-in-fact or proximate cause of the decedent's injuries. (ECF No. 104, at 1; ECF No. 100-1, at 15-18; ECF No. 97, at 5).

To prove negligence under Maryland law, a plaintiff must prove that: (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of

the duty. *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999).

There is no real dispute between the parties regarding the first and third elements. Defendants do not dispute that there are relevant standards of care and that Mrs. Renauer was injured. The parties disagree, however, as to whether the Defendants breached their duties and whether their actions caused the decedent's injuries.

###### a. Negligence of Defendant Discovery Creek

Beginning with Defendant Discovery Creek, Plaintiffs contend that Discovery Creek was negligent because it created an unreasonably dangerous condition in the museum by installing the slide, it allowed the slide to remain, it failed to warn invitees of this unreasonably dangerous condition, and it failed to provide adequate supervision in the museum. (ECF No. 2, at ¶ 39(a)-(l)). Plaintiffs argue that Discovery Creek had a heightened duty to maintain a safe environment for invited visitors to its property. Discovery Creek does not dispute that Mrs. Renauer and her granddaughters were invitees to the museum, but disagrees that it breached its duty. (ECF No. 104, at 7-8).

The owner or occupier of land has a duty to "use reasonable and ordinary care to keep his premises safe for the invitee and to protect him from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety will

not discover." *Rowley v. Mayor of Baltimore*, 305 Md. 456, 465 (1968).[5]   The mere fact that an invitee is injured on the premises does not establish negligence; the invitee bears the burden of showing that the landholder or occupier created the dangerous condition or had actual or constructive notice of it. *Lexington Market Auth. V. Zappala*, 233 Md. 444, 446 (1965).  The owner has a duty to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers, but there is generally no duty to warn about open, obvious, and present dangers.  *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.App. 381, 388-89 (1997).

Plaintiffs correctly point out that Discovery Creek was responsible for the slide's installation and had knowledge of its presence.  (ECF No. 101, at 12).  Plaintiffs also argue that Discovery Creek's failure to obtain the installation materials and safety checklist for the slide or to familiarize itself with industry standards related to the slide was a breach of its duty.  (*Id.* at 15).  If Discovery Creek had looked at these materials, Plaintiffs argue, it would have known that the slide

---

[5] Mrs. Renauer and her grandchildren were invitees to the Discovery Creek museum because they were "invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business."  *Rowley v. Mayor of Baltimore*, 305 Md. 456, 465 (1968).

was intended for residential use only and would not have installed it. Plaintiffs also offer a list of problems with the slide and its installation and use in the museum. Plaintiffs contend that the slide should not have been enclosed in the tree structure because the enclosure concealed the true nature of the slide and was in violation of the mandate of the United States Consumer Products Safety Commission that slides have a certain use zone in front of the access to and the sides of the slide extending a minimum of six feet from the perimeter of the equipment. (ECF No. 101, at 31). Plaintiffs maintain that Discovery Creek should not have used a slide intended for residential use in a public space and that it should have not used the tree enclosure because it placed constraints on Mrs. Renauer's egress from the bottom of the slide. (*Id.* at 34-37). Plaintiffs also argue that Discovery Creek should have conducted a risk assessment prior to installation of the exhibit and should have provided sufficient supervision for the slide. (*Id.* at 33-34*)*.

There may be a genuine dispute of fact with respect to some of Discovery Creek's alleged breaches of its duties, but the crux of a negligence case is causation and on that element all but one of Plaintiffs' theories fail. As the Maryland Court of Appeals recently emphasized, "negligence is not actionable unless it is a proximate cause of the harm alleged." *Pittway*

*Corp. v. Collins*, 409 Md. 218, 243 (2009)(quoting *Stone v. Chicago Title Ins.*, 330 Md. 329, 337 (1993)). "To be a proximate cause for an injury, 'the negligence must be (1) a cause in fact, and (2) a legally cognizable cause.'" *Id.* (citing *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 156-57 (1994)). Causation in fact refers to the requirement that the defendant's conduct actually produced an injury. *Id.* The second requirement, that the negligence is a legally cognizable cause requires the court "to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Id.* at 245 (citing *Stone*, 330 Md. at 337). "The question of legal causation most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct." *Id.*

Here Plaintiffs fail to establish cause in fact because there is no evidence from which to conclude that any problems with the slide or its installation caused the decedent's injuries. Discovery Creek points out that Plaintiffs' only proffered theory for the cause of Mrs. Renauer's injury was that given by their expert Dr. Jamie R. Williams, and Dr. Williams believes that the injuries were caused by granddaughter Sophie's "right lower extremity contacting the left back side of [Mrs. Renauer's] head, while her head was turned to the right." (ECF No. 104, at 14)(citing ECF No. 99-14, at 7-8). In Dr.

13

Williams' opinion, "had Sophie not contacted Renauer or Renauer's head not been turned, Renauer would not have sustained her debilitating cervical spine injuries." (ECF No. 99-14, at 7). Dr. Williams also testified that she had ruled out all of the remaining possibilities as to the cause of Mrs. Renauer's injuries. (ECF No. 99-10, at 109). Neither Plaintiffs nor their other experts have proffered any other theories as to the cause of Mrs. Renauer's injury.

Even assuming that Defendants are responsible for all of the violations identified by Plaintiffs with respect to the slide's use at the museum, there is no evidence from which a reasonable jury could conclude these acts or omissions caused Mrs. Renauer's injury. Beginning with the enclosure of the slide in the tree structure, there is no evidence that Mrs. Renauer would have chosen not to enter the slide without the enclosure. Numerous witnesses have testified that the slide's circular nature was apparent when looking at the slide from the side or at the top before descending. (ECF No. 99-1, at 123-26; ECF No. 99-4, at 56-58; ECF No. 99-6, at 114-15; ECF No. 104-1, at 240-41, 246-47, 249, 258, 496; ECF No. 99-16, at 409, 414; ECF No. 99-17; ECF No. 99-18). In addition, Mrs. Renauer had the benefit of having observed her own grandchildren using the slide, and she had devised a system whereby the girls would communicate with each other to avoid a collision in the slide.

(ECF No. 99-4, at 59-60). The only reasonable inference on this record is that Mrs. Renauer was aware of the slide's circular nature and the need to make sure that only one person was present in the slide at the same time.

There is also no evidence that delayed egress from the slide because of the tree enclosure caused or intensified Mrs. Renauer's injuries. Plaintiffs' expert Dr. Williams testified that the injury was caused by Sophie striking her grandmother in the neck inside the slide. In addition, Mrs. Renauer's other granddaughter, Lola, testified that when her grandmother reached the bottom of the slide she was already injured and appeared unconscious. (ECF No. 99-4, at 82-88). Plaintiffs contend that a jury could find that the injury occurred at the bottom of the slide. This argument misrepresents the nature of fact finding and the role of the jury. A jury cannot base its decision on pure speculation. Jurors can only consider the evidence presented to them and weigh it. Even if a jury finds Lola's testimony unreliable, there is simply no evidence that the alleged impediment to egress from the enclosure caused or contributed to Mrs. Renauer's injuries. Accordingly it is immaterial whether the extended egress was a violation of any industry standards.

There is also no evidence that the use of a residential slide in a public setting caused Mrs. Renauer's injuries or that

if Discovery Creek had installed a slide designed for commercial public use, Mrs. Renauer's injury would not have occurred. Moreover, contrary to Plaintiffs' contention, there is no evidence that the circular slide at issue did not satisfy the public use requirements despite being labeled for residential use only. (*See, e.g.*, ECF No. 105-2, at 24-25 (slide manufacturer testifying that he had never had occasion to consider whether the slide was public use compliant); ECF No. 104-1, Ex. 15A, at 273, ECF No. 105-4, Ex. 15A2, at 229, 272 (Plaintiffs' playground safety expert, Lisa Thorsen, testifying that she believes that the slope of the slide was compliant with residential and public use standards)). Likewise Discovery Creek's failure to conduct a formal risk assessment on the slide prior to its installation did not cause the accident. While Plaintiffs may be correct that the risk assessment conducted in the course of the litigation "does not satisfy Discovery Creek's obligation to adequately assess the presence of unreasonable risk prior to the exhibit being opened to the public," (ECF No. 100-1, at 32), the fact that the post-hoc risk assessment revealed no problems with the slide and instead confirmed that more than 70,000 Turbo Tube Slides had been sold without a reported injury, (ECF No. 99-6, at 46), demonstrates that the initial failure to conduct the assessment had no negative effect and did not cause the injuries.

Plaintiffs' allegations of insufficient supervision warrant additional discussion. Plaintiffs argue that Discovery Creek had a duty to provide adequate supervision for the circular slide exhibit and the other exhibits at the museum. (ECF No. 101, at 33). Discovery Creek maintains that the museum's supervision levels, along with its policy that all children be accompanied by an adult, were more than adequate and argues that Plaintiffs have identified no industry standard or regulation requiring higher levels of supervision. (ECF No. 104, at 29). In addition, Discovery Creek notes that at the time of the accident a trained staff member was monitoring the exhibit and no other patrons were present, making the ratio of adults to children three to two. (*Id.* at 30). Discovery Creek also notes that it had no duty to supervise adult conduct in the exhibit and points out that Mrs. Renauer was aware of the danger of two riders colliding in the slide and had devised a system of communication between her granddaughters as a precaution against collision. (ECF No. 105, at 13)(citing ECF No. 99-4, at 59-61). It also points out that slides are a common feature in parks and play areas for children and adults, and their general properties and potential for harm is well known.

The standards and checklists identified by Plaintiffs mandate only that the appropriate level of supervision be

provided. Specifically, Plaintiffs' playground safety expert, Lisa Thorsen, relies on Sections 6.4 and 12.4.8 of the United States Consumer Product Safety Commission "Handbook for Public Playground Safety" and the slide's product safety checklist from Playcore Wisconsin as her references for determining the necessary standard of care. (ECF No. 102-14, at 577-82). Section 6.4 of the Handbook addresses playground supervision and provides that: "supervisors may be paid professionals (full-time park or school/child care facility staff), paid seasonal workers (college or high school students), volunteers (PTA members), or the parents of the children playing in the playground." (ECF No. 102-13 at § 6.4). It further states "[t]he quality of supervision depends on the quality of the supervisor's knowledge of safe play behavior." (*Id.*). Section 12.4.8 addresses tube slides and states that "consideration should be given to extra supervision on playgrounds having tube slides or to having transparent tube sections for observation and supervision." (*Id.* § 12.4.8). The slide's product safety checklist requires only that "on-site adult supervision [be] provided for children of all ages." (ECF No. 102-14, at 581).

Plaintiffs' expert testified that Discovery Creek's supervision was inadequate, but she would not definitively state what level of supervision she believes was necessary, and Plaintiffs insist in their opposition that they are not arguing

that any standard requires supervision at the top and bottom of slides or mandates a certain degree of training for supervisors. (ECF No. 101, at 33-34). Yet Plaintiffs argue that a jury should decide whether Discovery Creek complied with the standards for supervision. (*Id.*).

The evidence presented leaves no question that Discovery Creek was in compliance with any standards or rules that Plaintiffs have identified. Discovery Creek provided for supervision by both paid professionals and parents as authorized by the Handbook for Playground Safety and all the supervising parties were aware of the specific risk of collision inside a tube slide. With no evidence of a formal standard or regulation requiring greater supervision and no expert testimony providing details about what if any additional supervision Discovery Creek was obligated to provide there is no basis for a jury to conclude that Discovery Creek breached its duty. It is therefore unnecessary to consider the hypothetical question whether the presence of additional supervisors could have prevented Mrs. Renauer's injuries.

In sum, Plaintiffs have insufficient evidence to establish that Discovery Creek should be held liable for negligence, and summary judgment for Discovery Creek is appropriate.

**b.  Negligence of Defendant Merrifield**

Plaintiffs argue that Defendant Merrifield committed four breaches of its duty of care:  (1) it created an unreasonably dangerous condition by enclosing the slide; (2) it violated the slide's installation and instruction standards by enclosing the slide; (3) it failed to advise Discovery Creek that supervision was necessary; and (4) it placed a slide intended for residential use in a public setting.  (ECF No. 107, at 3)(citing ECF No. 100-1, at 6).

Several of Merrifield's alleged breaches overlap with the allegations against Discovery Creek and also lack a causal link to Mrs. Renauer's injuries.  As discussed above, there is no evidence that the enclosure of the slide inside the tree structure caused the injuries.  Nor is there any evidence from which to conclude that the use of a residential rather than a commercial slide was a causal factor.  The only accusation unique to Merrifield is that it failed to advise Discovery Creek that supervision was necessary.  This alleged breach also must fail because Plaintiffs have not identified any law, standard, or regulation that would require Merrifield to provide Discovery Creek with such a warning.  Moreover because there is no evidence that Discovery Creek had an inadequate level of supervision in place, even if Merrifield did have a duty to

instruct Discovery Creek, its failure to do so had no causal effect.

Accordingly, summary judgment in favor of Merrifield on the negligence claim is warranted.

### c.  Negligence of Defendant Creative Playthings

Plaintiffs argue that Defendant Creative Playthings breached its duty by failing to take appropriate steps to ensure that the slide was going to be placed in a residential setting. (ECF No. 101, at 6).  Plaintiffs argue that Creative Playthings was required to do so pursuant to its written agreement with Playcore Wisconsin.  (*Id.*)(citing ECF No. 102-8, at 22-23; ECF No. 102-9, at 28-33).  Creative Playthings argues in response that even if Plaintiffs can establish that they had such a duty, the evidence, including testimony from Plaintiffs' own experts, makes clear that the use of residential slide did not cause or contribute to Mrs. Renauer's injuries. (ECF No. 97, at 7).

Both parties' experts have opined that the use of a residential slide, rather than a commercial one, did not cause Mrs. Renauer's injury. (*See* ECF No. 99-24, at 273, 558, and 567)(Lisa Thorsen testifying that the slide itself complied with public use standards);(ECF No. 99-23, at 59)(Defendant's expert Teresa Hendy testifying that the slide met all criteria for public playground safety and that there was nothing in the

design of the slide that made it unsafe for use). Accordingly Plaintiffs have insufficient evidence to maintain a claim of negligence against Creative Playthings.

### 3. Breach of Warranty

Defendants Merrifield and Creative Playthings seek summary judgment on Plaintiffs' breach of warranty claims. Defendant Merrifield argues that Plaintiffs' breach of warranty claims against it must fail because the UCC is not applicable to its contract with Discovery Creek. Specifically Merrifield argues that its contract with Discovery Creek was not a contract for the sale of goods but rather a transaction for services. (ECF No. 100-1, at 19). In addition Merrifield argues that it made no express warranties to Discovery Creek relating to the exhibit and it did not breach any implied warranties. (ECF No. 100-1, at 20-22). In addition, as discussed above in the negligence section, Merrifield argues that Plaintiffs cannot establish causation. (*Id.* at 22). Creative Playthings argues that Plaintiffs have presented no argument or proof that the slide was defectively designed or unreasonably dangerous and thus the breach of warranty claim must fail. (ECF No. 103, at 2).

In a Maryland warranty action the plaintiff must show that a warranty existed, that the product did not conform to the warranty, and that the breach proximately caused the injury or

damage. *Mattos, Inc. v. Hash*, 279 Md. 371, 378 (1977). The Maryland Uniform Commercial Code governs actions asserting breaches of express or implied warranties for transactions in goods. *See* Md. Code Ann., Com. Law § 2-102 . Section 2-313(1) provides that "express warranties by the seller are created as follows: (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Section 2-314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The code further explains that "goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; . . . and (c) are fit for the ordinary purposes for which such goods are used." § 2-314(2). In addition "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose." § 2-315(1).

It is not necessary to determine whether the agreement between Discovery Creek and Merrifield constituted a contract

for the sale of goods because Plaintiffs cannot satisfy the other requirements for breach of warranty. Plaintiffs have not provided any evidence that Merrifield made any express warranties to Discovery Creek. As a result Plaintiffs cannot prevail on the theory that Merrifield breached an express warranty. Additionally, Plaintiffs have not identified any defects in the slide that would constitute a breach of the implied warranty of merchantability nor have they provided any evidence to show how defects in the slide were the cause of the decedent's injuries. For these reasons Plaintiffs' breach of warranty claim against Merrifield must fail. The lack of evidence of product defects also forecloses the possibility that Plaintiffs could succeed in their breach of warranty claim against Creative Playthings. Accordingly summary judgment will be granted in favor of Defendants on the breach of warranty claims.

### 4. Strict Liability

Defendants Merrifield and Creative Playthings also seek summary judgment on Plaintiffs' strict liability claims. Plaintiffs claim that Merrifield and Creative Playthings are strictly liable because they "designed, manufactured, assembled, distributed, sold, installed and placed in the stream of commerce the enclosed spiral slide which was defective and unreasonably dangerous." (ECF No. 2 ¶ 95). Plaintiffs also

24

contend that the slide was defectively designed, defectively manufactured, lacked adequate warnings, and contained a hidden danger in that it had a sharp twist that was not visible due to the spiral slide being hidden in an enclosure. (*Id.* at ¶ 96). Defendants argue that Plaintiffs have no evidence to support their claim and point out that Plaintiffs' own experts admitted that the slide itself was not unreasonably dangerous. (ECF No. 100, at 23-24). Additionally Merrifield argues that it did not design either the slide or the enclosure. (*Id.*).

Maryland has adopted the definition of strict liability for defective products from the Second Restatement of Torts § 402(a). *See Phipps v. Gen. Motors Corp.*, 278 Md. 337, 341 (1976). Accordingly in Maryland to recover in an action for strict liability a plaintiff must establish that:

> (1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition.

*Halliday v. Sturm, Ruger & Co., Inc.*, 368 Md. 186, 194 (2002)(citing *Phipps*, 278 Md. at 344). To constitute a defective condition, the product must be "'at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to

him.'" *Phipps*, 278 Md. at 344 ((quoting from § 402A of the Restatement (Second) of Torts (1965)). *Phipps* further defined an unreasonably dangerous product as one that is "'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases, with the ordinary knowledge common to the community as to its characteristics.'" *Id.* (again quoting from § 402A of the Restatement (Second) of Torts (1965)).

Plaintiffs contend that they have "established jury questions as to the defective nature of the good provided by Merrified to Discovery Creek and that the exhibit could be considered unreasonably dangerous." (ECF No. 101, at 58). But Plaintiffs do not elaborate on what these jury questions are, and the record evidence provides no support for either contention. It is also noteworthy that Plaintiffs make no arguments in their opposition regarding their claim of strict liability against Creative Playthings. As discussed above, the slide on its own did not cause Mrs. Renauer's injuries. The strict liability claim against Creative Playthings must fail on that basis without a need to consider whether the slide was defective. Nevertheless, there is no evidence that the slide was defective. It was a standard tubular slide whose nature was obvious to any consumer, including Mrs. Renauer. Plaintiffs' experts could not identify any component of the slide that was

unreasonably dangerous either. (ECF No. 99-24, at 283-93). Lisa Thorsen simply repeated her assessment that there must be a problem with using the slide in a commercial setting because it said it was only for residential use. Despite repeated requests, she could not identify any danger that using the slide in a public setting would pose or any other problems with the slide. (*Id.*). Similarly Plaintiffs' human factors expert, William Vigilante, Jr., identified no problems with the slide itself and instead testified that the slide was unreasonably dangerous "because they took it, put it in this exhibit and wrapped a tree around it and prevented people from identifying the true nature of the slide." (ECF No. 99-16, at 480). Moreover, Mr. Vigilante's claims about the impact of the enclosure on the ability of viewers to discern the curved nature of the slide are belied by the testimony of everyone that actually saw the enclosed slide and admitted that you could tell from its orientation and the location of the entrance and exit that there was a turn inside. Plaintiffs have not made a case that the slide on its own or in the enclosure was inherently dangerous.[6]

---

[6] Plaintiffs have an additional evidentiary problem in that the record shows that neither Merrifield nor Creative Playthings designed the enclosure and thus cannot be held liable for defective design. (*See* ECF No. 99-2, at 29-30, 39-40, 87; ECF No. 99-12, at 24).

Plaintiffs have insufficient evidence to support their claims of strict liability against Merrifield and Creative Playthings and summary judgment will be granted in Defendants' favor on these counts.

**B.    Defendants' Motions to Exclude  Expert Testimony**

In addition to seeking summary judgment, Defendants also moved to exclude testimony from Plaintiffs' experts or in the alternative Defendants requested a preliminary hearing pursuant to Fed.R.Evid. 104(a).  (ECF Nos. 83, 86, 92).[7] Defendants argue that Plaintiffs' experts lack relevant qualifications and that their opinions are not derived from sound methodology and are unreliable.  (ECF No. 83, at 10-45).  Plaintiffs oppose the motion and maintain that their experts are well-qualified and should be permitted to testify.  (ECF No. 101, at 59-72).

In light of the decision to grant Defendants' motions for summary judgment, the admissibility of Plaintiffs' experts' testimony is no longer at issue.  Accordingly this motion will be denied as moot.

**C.    Third Party Defendant Playcore's Motion for Summary Judgment**

Third Party Defendant Playcore Wisconsin has also moved for summary judgment on the claims Defendants have asserted against

_____

[7] The primary memorandum and reply brief were submitted by Defendant Discovery Creek.  The other Defendants joined Discovery Creek's motion but did not offer additional arguments.

it for indemnification, contribution and breach of warranty. (ECF No. 79). Playcore argues that neither Plaintiffs nor Defendants have advanced a theory of liability against it and neither parties' experts have offered any opinions that the slide itself caused or contributed to Mrs. Renauer's injuries. (*Id.* at 1). Discovery Creek and Merrifield submitted a joint opposition to Playcore's motion and argued that at this stage of the case they were only required to provide sufficient evidence of Playcore's contingent liability. (ECF No. 80, at 2). Defendants contend that their claims against Playcore would only render Playcore liable if Plaintiffs first succeed in establishing the liability of one or more Defendant. (*Id.* at 9).

Plaintiffs have not succeeded in establishing the liability of any of the Defendants. Because summary judgment will be awarded in Defendants' favor on each of Plaintiff's claim, Defendants have no basis to seek indemnification or contribution from Playcore. Playcore's request for summary judgment on Defendants' cross-claims will be granted.

## III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted, Defendants' motion to exclude Plaintiffs' expert testimony will be denied as moot, and Third

Party Defendant Playcore's motion for summary judgment will be granted.  A separate Order will follow.

                            _____/s/_____
                            DEBORAH K. CHASANOW
                            United States District Judge